UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20272-CR-ALTMAN

UNITED STATES OF AMERICA

v.

EDWARD CORDOVEZ,

    Defendant.
_____/

**THE UNITED STATES OF AMERICA'S RESPONSE TO
DAYANA DEL CARMEN PELAEZ MOLINA'S MOTION TO APPOINT ATTORNEY**

    The United States of America, pursuant to this Court's order dated November 5, 2024, [ECF No. 35], hereby responds to Ms. Pelaez Molina's Motion to Appoint Attorney [ECF No. 34] (the "Motion"). The Court has discretion whether to grant her request, and the Government writes only to assist the Court's understanding of the issues presented in the Motion.

    As an initial matter, because Ms. Pelaez Molina is merely a witness—and not a suspect—the Court is not required to appoint a lawyer for her. "Witnesses have no right to counsel under either the fifth or the sixth amendment." *First Def. Legal Aid v. City of Chicago*, 319 F.3d 967, 971 (7th Cir. 2003) (citing *McNeil v. Wisconsin*, 501 U.S. 171 (1991) and *Minnesota v. Murphy*, 465 U.S. 420 (1984)). Ms. Pelaez Molina's Fifth Amendment right to counsel would attach only if she "invoke[d] that right during a custodial interrogation." *United States v. Johnson*, 42 F.3d 1312, 1318 (10th Cir. 1994); *see also Alexander v. Connecticut*, 917 F.2d 747, 751 (2d Cir. 1990) ("Absent a police dominated interrogation, the fifth amendment right to counsel does not attach."). Her Sixth Amendment right to counsel would attach "only at or after the time that adversary judicial proceedings have been initiated against [her]." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).

Here, Ms. Pelaez Molina is not in custody and has not been interrogated, much less charged. So, while the Court *could* appoint counsel to advise her in this case—including, of course, about the privilege against self-incrimination and the spousal privilege—the Court does not *have* to do so. Whatever the Court's decision, though, the Defendant would lack standing to challenge it because "the privilege[s] at issue belongs to the witness, not to the party on trial." *United States v. Harding*, 864 F.3d 961, 964–65 (8th Cir. 2017) (internal citations omitted) (rejecting a district court's appointment of counsel for two government witnesses at trial as a basis for challenging a defendant's conviction); *see also United States v. Anderson*, 39 F.3d 331, 350 (D.C. Cir. 1994) (explaining that an appellant lacked standing to contest a district court's decision to compel his spouse to testify at trial, which the district court did after appointing counsel for the spouse, holding a hearing on the applicability of spousal privilege, and deciding that the privilege did not apply).

Aside from Ms. Pelaez Molina's claim for counsel, she notably contends that the "spousal privilege [ ] shields me from having to testify against my husband, if I choose." Motion at 1. She seems to believe that she can exercise the "spousal testimonial privilege," *United States v. Singleton*, 260 F.3d 1295, 1297 (11th Cir. 2001), which "bars one spouse from testifying adversely against the other," *United States v. Entrekin*, 624 F.3d 597, 598 (11th Cir. 1980) (per curiam).[1] But she is wrong about that. To the contrary, this is exactly the type of case where the spousal testimonial privilege does *not* apply and where the Government could compel Ms. Pelaez Molina's testimony against the Defendant if it decides to do so.

---

[1] The spousal testimonial privilege is held by "the witness-spouse alone." *Trammel v. United States*, 445 U.S. 40, 53 (1980). On the other hand, the law also recognizes a second type of marital privilege—the marital confidential communications privilege—"which permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying, as to any confidential communications made during their marriage," *United States v. Breton*, 740 F.3d 1, 9–10 (1st Cir. 2014) (cleaned up)).

That is because there is a well-established exception to the spousal testimonial privilege where a case involves offenses against the spouse or, as here, the spouse's children.  *See, e.g., Wyatt v. United States*, 362 U.S. 525, 530 (1960) (holding that a victim-spouse in a prostitution case could be compelled to testify against her defendant husband); *Trammel*, 445 U.S. at 46 n.7 (1980) (explaining that *Wyatt* recognized an exception to the spousal testimonial privilege where one spouse commits a crime against another, or the spouse's property, or against children of either spouse); *United States v. Cameron*, 556 F.2d 752, 755 (5th Cir. 1977) ("The exclusion of adverse testimony by a spouse is not an absolute privilege. There have been long recognized exceptions, such as exist in prosecutions for crimes committed by one spouse against the other or against the children of either[.]"); *United States v. Allery*, 526 F.2d 1362, 1367 (8th Cir. 1975) ("We conclude, therefore, that the exception to the anti-marital facts privilege for offenses committed against a spouse should be expanded to include crimes done to a child of either spouse, and that the trial court here did not err in allowing the testimony of Mrs. Allery as to the activity of her husband on the night of September 17, 1974, or other alleged sexual misconduct upon her children.").

Moreover, because the exception also applies to the marital confidential communications privilege, the Defendant could not keep Ms. Pelaez Molina from testifying, regardless of whether she wanted to or not.  *See, e.g., Breton*, 740 F.3d at 12 ("Tackling this issue for the first time, we agree with our sister circuits and the vast majority of states that the 'offense against spouse' exception to the marital communications privilege must be read to cover an offense against a child of either spouse in order to further the privilege's underlying goals of promoting marital and family harmony."); *see also United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992) ("Similarly, the marital communications privilege should not apply to statements relating to a crime where a spouse or a spouse's children are the victims.").

If the Court is inclined to appoint counsel for Ms. Pelaez Molina, the Government would request that the Court employ what appears to be the typical practice in this District: authorize Ms. Pelaez Molina to appear in magistrate court, where counsel could be appointed under the Criminal Justice Act if she financially qualifies. *Cf.* 18 U.S.C. § 3006A (requiring district courts to have a plan for providing counsel for certain individuals, so long as they are financial eligible). Based on the longstanding precedent cited above, however, the Government contends that it can compel Ms. Pelaez Molina to testify against the Defendant in this case if it chooses to do so.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY:  */s/ Jacob Koffsky*
Jacob Koffsky
Assistant United States Attorney
99 NE 4th Street
Miami, Florida 33132
305-961-9386
Jacob.Koffsky@usdoj.gov
Florida Bar. No. 1018115

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document and the referenced discovery is being served this day on counsel of record.

*/s/ Jacob Koffsky*
Jacob Koffsky
Assistant United States Attorney